# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CR-28-TLS |
| | ) | |
| DEMETRIUS ROBINSON | ) | |

## OPINION AND ORDER

The Defendant, Demetrius Robinson, is facing a charge that he violated 18 U.S.C. § 1001(a) by making a materially false, fictitious, and fraudulent statement and representation during an official investigation conducted by the Bureau of Alcohol, Tobacco, Firearms, and Explosives. He seeks an order from the Court suppressing any statements he made to federal investigators who interviewed him on January 30, 2017, and February 9, 2017. The Defendant's Motion to Suppress [ECF No. 21] turns on whether the law required that the investigators advise the Defendant of his constitutional rights, as set forth by the Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966). This, in turn, depends on whether the facts show that the Defendant was in custody and subjected to interrogation.

The Court held an evidentiary hearing on September 11, 2017, regarding this Motion. At the hearing, Special Agent Worthen and Special Agent Skender testified on behalf of the Government. Subsequently, the Defendant filed a Brief in Support of His Motion to Suppress Statements [ECF No. 37] on November 1, 2017. The Government filed a Response [ECF No. 39] on December 20, 2017, and the Defendant filed a Reply [ECF No. 40] on January 8, 2018. This matter is now fully briefed and ripe for review.

# ANALYSIS

Before police can conduct a custodial interrogation of a suspect, they must advise him of certain rights and abide by certain procedures. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Specifically, law enforcement officers must advise a suspect that he has the right to remain silent, the right to have an attorney present, and the right to have an attorney who is retained or appointed. *Id.* The Supreme Court has defined a "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 467. "Although the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving of *Miranda* protection, the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). This is an objective test that asks whether a "reasonable person" in the circumstances would have believed he was free to go, not whether the particular defendant believed so. *United States v. Salyers*, 160 F.3d 1152, 1159 (7th Cir. 1998). Factors relevant to the totality of circumstances include: "(1) the location of the interrogation; (2) the duration of the interrogation; (3) any statements made by the suspect during the interrogation; (4) any use of physical restraints during the interrogation; and (5) whether the suspect was released at the end of the interrogation." *United States v. Patterson*, 826 F.3d 450, 455 (7th Cir. 2016). Additionally, the Court may consider whether the encounter was in a public place, whether the suspect consented to speaking to the officer, whether the officers told the suspect he was not under arrest and was free to leave, whether the person was moved from one location to another, whether there was a threatening presence of several officers and display of weapons or physical force, and

whether the officers used a tone that would likely prompt obedience. *Id.* (first quoting *United States v. Littledale*, 652 F.3d 698, 701 (7th Cir. 2011), then citing *United States v. Snodgrass*, 635 F.3d 324, 327 (7th Cir. 2011)).

The Defendant argues that, under the totality of the circumstances, a reasonable person in his position would not have felt free to terminate the interview conducted on January 30, 2017,[1] and that therefore he was subjected to a custodial interrogation without having been apprised of his constitutional rights. The Court must look to the "features of the interrogation," *Howes v. Fields*, 565 U.S. 499, 514 (2012). In the instant case, after a phone call with Special Agent Worthen, who indicated that he could "hopefully" return the Defendant's firearm to him (Evid. Hrng. Trans. 20:21, ECF No. 38), the Defendant voluntarily appeared at the Fort Wayne ATF office on January 30, 3017. The Defendant's fiancée, Tamiya Goodwin, accompanied him to the interview and was permitted to be present during the interview. Special Agents Worthen and Skender conducted the interview. During the interview, the Defendant's mother entered the room and remained in the room until the interview ended. Before the interview began, Worthen and Skender advised the Defendant that he was not under arrest and that he could leave at any time, and also demonstrated that the door to the interview room was unlocked. Worthen and Skender also advised the Defendant later in the interview that he was free to leave at any time. The two

---

[1] The Court notes that in the Defendant's Motion, he also requests suppression of statements arising out of the February 9, 2017, interview. However, neither the Defendant nor the Government addressed this interview in the briefing, and the transcript of the evidentiary hearing indicates to the Court that there is no dispute that no substantive interview occurred on February 9, 2017, in violation of the Defendant's rights. (*See Evid. Hrng. Trans.* 30:18 ("no substantive statements given"); 32:8–15 ("Mr. Robinson didn't make any statement during [the February 9th] interview, correct, as far as statements as far as guns and that kind of thing? . . . "[H]e's not making any statements to law enforcement, correct?"); 33:16–19 (Skender "advised Mr. Robinson that he could not answer any questions—he could not ask any questions, because he was obviously in custody."); 43:4 ("[H]e was not Mirandized, because he didn't want to talk."); 45:14–16 ("I guess I'll call it the attempted interview then on February 8th going into February 9th").)

confirmed that the Defendant understood this. At no time during the interview did the Defendant indicate that he did not believe he was able to leave the interview. Eventually, the Defendant ended the interview by telling Goodwin: "We're done. Let's get out of here." At this time, the Defendant, the Defendant's mother, and Goodwin all exited the room. Worthen and Skender made no attempt to prevent the Defendant from exiting the room and terminating the interview. The Defendant never received his firearm.

The Court finds that the "objective facts are consistent with an interrogation environment in which a reasonable person would have felt free to terminate the interview and leave." *Yarborough v. Alvarado*, 541 U.S. 652, 663 (2004). The Defendant was able to access the unlocked conference room door with no law enforcement between him and the door. *See United States v. Ambrose*, 668 F.3d 943, 957 (7th Cir. 2012) (distinguishing conference room setting from case where "lilliputian space . . . meant that one detective was essentially blocking the door, such that the suspect would have had to ask him to move or brush by him in order to exit"). The Defendant was not threatened with any adverse consequences. The agents informed the Defendant that they wanted to talk to him about a firearms trafficking investigation and informed him that they were not there to arrest him. *United States v. Borostowski*, 775 F.3d 851, 862 (7th Cir. 2014) (stating the fact that defendant was told he was not under arrest or in custody weighed in favor of voluntariness); *Ambrose* 668 F.3d at 957 (holding that circumstances of interview were "not indicative of custody, but if any doubt remained it would have been dispelled when" the defendant was informed "that he was not under arrest"); *Littledale*, 652 F.3d at 702 (emphasizing the importance of assuring the defendant he was not under arrest, even though the questioning agents did not tell the defendant that he was free to leave). There was not an inordinate or unnecessary number of officers present so as to create a threatening atmosphere.

Indeed, for at least part of the interview, the Defendant and those accompanying him outnumbered the law enforcement that was present. Nor did the special agents display any weapons or use physical force.

The Defendant appears to acknowledge that, on these facts alone, a reasonable person may have felt free to leave. However, the Defendant argues that there is an additional consideration that, under the totality of the circumstances, requires a different conclusion. Specifically, the Defendant argues that the interviewing agents continued to question the Defendant despite his repeated representations that he was there solely to retrieve his firearm, the agents' understanding that this was his sole purpose, and the early determination that the Defendant would not be receiving his firearm. The questioning, according to the Defendant, thus amounted to custodial interrogation.

In support of his position that the purpose for which he attended the interview is determinative in this case, the Defendant relies heavily on the Fourth Circuit's decision in *United States v. Giddens*. In *Giddens*, the defendant's car was seized after being used in a series of bank robberies. 858 F.3d 870, 875 (4th Cir. 2017). The Baltimore County Police, believing the defendant to have been involved in the robberies, called the defendant and informed him that he needed to come to police headquarters in order to retrieve his vehicle. *Id.* Upon arrival by his own volition, the defendant was taken to an interview room. *Id.* There were two doors to the interview room, one of which remained unlocked for the duration of the interview. *Id.* at 876. However, when an officer left the interview room through the door immediately behind the defendant, the defendant could hear the door lock, and that door remained locked for the remainder of the interview. *Id.* The interviewing officers also took the defendant's phone away from him, placed it on the end of the table farthest from the defendant, and eventually instructed

5

the defendant to turn his phone off. *Id.* However, the defendant was neither handcuffed nor told that he was under arrest. *Id.* In fact, the interviewing officers represented multiple times that the defendant was not "in trouble" at all and that the interview was merely standard procedure for returning the defendant's personal property. *Id.* at 876–77. Eventually, the interviewing officers presented the defendant with a *Miranda* waiver and told him that it was necessary for him to sign the waiver as part of the procedure for retrieving his vehicle. *Id.* at 877. Despite his misgivings, the defendant signed the waiver based on the officers' representation that his vehicle would not otherwise be returned to him. *Id.*

The Fourth Circuit found that the defendant felt unable to leave the interview because he would otherwise "forfeit the opportunity to obtain the return of his . . . property." *Id.* at 880. In fact, "the police threatened to indefinitely retain his car if he failed to sign the *Miranda* waiver and answer their questions." *Id.* at 882. The Defendant in the instant case argues that the facts of his case are analogous to those in *Giddens*: like Giddens, the Defendant attended the interview because he believed that participating in the interview was the only way he would be able to reclaim his personal property.

However, *Giddens* is distinguishable in an important respect: In *Giddens*, the defendant's car "was the means of maintaining his livelihood" because he needed it to get to his job. *Id.* In coming to its conclusion, the Fourth Circuit extended the Supreme Court's reasoning in two cases where the Supreme Court found that a reasonable person would not feel free to leave an interview when leaving would result in the loss of their jobs. *Id.* at 881–83 (first citing *Garrity v. New Jersey*, 385 U.S. 493 (1967), then citing *Lefkowitz v. Cunningham*, 431 U.S. 801 (1977)). In *Garrity*, the Supreme Court stated that "[t]he option to lose [a person's] means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain

6

silent." 385 U.S. at 497. In *Lefkowitz*, the Supreme Court considered the economic effects of the defendant's refusal to testify. 431 U.S. at 807. The Fourth Circuit found these cases controlling because of the "threatened economic consequences" that would result if the defendant did not recover his car, which was essential to his means of livelihood. *Giddins*, 858 F.3d at 883. In the instant case, there is no indication that the Defendant would suffer any such economic consequences if he was unable to recover his firearm. The Court does not find that *Garrity* and *Lefkowitz* extend so far as to apply to *any* piece of personal property in the Government's possession. Therefore, the Court cannot say that a reasonable person in the Defendant's circumstances would not have felt free to leave and terminate the interview.

Moreover, as the Government points out, in *Giddens*, the fact that the defendant attended the interview solely to retrieve his vehicle was only one consideration in the Fourth Circuit's analysis. Unlike the instant case, the interviewers blocked Giddens' path to the only unlocked door and requested that Giddens turn off his phone. Here, the special agents demonstrated that the door was, in fact, unlocked, and the Defendant did not have to pass the interviewers in order to exit the room. Nor was the Defendant asked to surrender access to his phone. Thus, the Fourth Circuit's decision in *Giddens* is neither binding nor directly on point, and, considering the totality of the circumstances, the Court finds that a reasonable person in the Defendant's position would have felt free to terminate the interview and leave on January 30, 2017.

## CONCLUSION

Because a reasonable person would have felt free to leave and terminate the interview at any time, the Defendant was not in custody on January 30, 2017, as would require the reading of
7

his *Miranda* rights. Accordingly, the Court DENIES the Defendant's Motion to Suppress [ECF No. 21].

SO ORDERED on January 17, 2018.

     s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT